IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIGUEL E. DIAZ,

    Plaintiff,                    No. CIV S-04-2375 MCE JFM P

    vs.

STATE OF CALIFORNIA, et al.,

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983.

        On November 8, 2006, plaintiff filed a motion for preliminary injunction alleging, *inter alia*, that he has been denied and delayed access to insulin and "other medically prescribed medications for diabetes related" thereto. (Id. at 1.) Plaintiff also contends that correctional officers refuse to allow minority, insulin-dependent inmates equal access to medical treatment, and claims that non-minority, non-insulin-dependent inmates are given priority access, regardless of security and safety issues. Finally, plaintiff alleges defendants have retaliated against him.

        On December 14, 2006, plaintiff filed a declaration in support of his motion.[1] In his declaration, plaintiff recounts various dates in 2006 which he was denied insulin, either once

---

[1] This declaration appears to be largely duplicative of the November 30, 2006 declaration, with the exception of an additional 18 pages. The court has, therefore, reviewed the larger filing.

1

a day or for the entire day. Many of the allegations relate to an abscessed tooth which was partially extracted, then later fully extracted, but then plaintiff sustained a severe infection which resulted in his hospitalization from June 27, 2006 to July 6, 2006.

Plaintiff's allegations pertaining to August 14 through November, 2006, return to the denial of insulin, but include an allegation that he is often forced to choose between receiving his insulin or his food; that is, late release from his cell precludes him from getting his insulin and his meal.

On April 11, 2007, defendants filed their response. Defendants state plaintiff receives insulin and finger sticks twice a day for treatment of his diabetes. They state that "occasionally, Diaz has (1) refused to take a finger stick and/or insulin; (2) not shown up at the clinic to receive insulin and a finger stick; and (3) left the clinic without receiving a finger stick and insulin." (Resp. at 1-2.) Defendants add that on the days when plaintiff does not show up to receive insulin and a finger stick, a nurse will call and remind him. Defendants' position is that the only time plaintiff does not receive proper medical treatment for diabetes is when he willingly refuses it. Defendants support their position by providing a declaration of Dr. Traquina who reviewed plaintiff's medical records.

No declaration of other correctional officers or medical health professionals was provided.

On May 1, 2007, plaintiff filed his reply. Plaintiff contends that the medical records provided by defendants confirms the late releases he complains of. Plaintiff contends that Facility 2, Level III, is allowed out of custody for insulin and medications for diabetes-related complications at 6:00 a.m. and 5:30 p.m., respectively. Plaintiff argues that the medical records provided by defendants demonstrate that plaintiff's housing unit, Facility 1, Level III, is

/////
/////
/////

not released at those times.  Plaintiff contends that this often results in his having to decide between getting insulin or food, but not both.[2]

In his declaration, plaintiff states that he was hospitalized in June through July 7, 2006, "for a life-threatening abscessed tooth which due to denial of insulin and proper dental care almost cost [him his] life." (May 1, 2007 Decl. at 1.)  Plaintiff has provided the declaration of inmate S. White, who states he has had to forego insulin to ensure he got his meal, and that white, nondiabetic inmates get preferential access over minority insulin-dependent inmates' access to medications.  (Decl. at 1. [Docket No. 80 at 6.])

Plaintiff also provided a copy of his second level appeal response, dated December 19, 2006, pertaining to plaintiff's complaint that on August 30, 31 and September 1-8, 2006, insulin-dependent diabetics were not allowed to receive their diets at 6:00 a.m.  (Reply, at 11. [Docket No. 80 at 11.]).  In that appeal, plaintiff stated that other inmates who were not diabetic were allowed to receive their religious diets at that hour.  (Id.)  The discussion portion of the second level appeal reads as follows:

> A thorough Second Level Review of your appeal issue was conducted.  The Second Level Review concludes that this program issue appeal was granted at the First Level Review.  Lieutenant Chirila was interviewed again on December 18, 2006.  He acknowledged that on occasion, meal release is delayed (for all inmates) because of lock downs, quarantines, and adverse weather conditions which result in fog line being implemented.  Further, Lieutenant Chirila stated that currently a proposal is underway to determine the feasibility of having First Watch staff conduct an early wake-up for inmates who require morning insulin dosages.  In this way, the morning release for breakfast can be expedited for all inmates.  Finally, Lieutenant Chirila noted that medically-designated inmates with diabetes should not go directly to the dining hall, but receive their insulin and then proceed to the dining hall.  In this way, it will expedite insulin-dependent inmates to receive access to insulin and their meals.

/////

---

[2] Plaintiff attempts to raise other minority inmates' claims/concerns.  However, this action is not a class action.  Therefore, this court has only addressed claims specific to plaintiff.

> Noted, is that all policy changes at CSP-Solano must be reviewed at the Associate Warden level and receive approval from the Chief Executive Officer (Warden) or his/her designee.

(Id. at 11-12.) The appeal was then partially granted:

> The portion of your appeal that is a request for medically-documented insulin-dependent inmates to have access to insulin and early breakfast release is granted. Currently, a procedure to have First Watch staff conduct an early wake-up for inmates who require morning insulin dosages is being developed (partially granted).

(Id. at 12.) Plaintiff filed copies of his attempts to obtain reasonable accommodation under the ADA. (Id. at 15-20; 29-33.) Plaintiff submitted a copy of his February 25, 2007 letter to Robert Sillen, the federal receiver in Plata v. Schwarzenegger, Case No. CIV S-01-1351 THE (N.D. Cal.).

Plaintiff also provided a copy of the second level appeal response dated March 1, 2007. (Reply at 53-54.) In that grievance, plaintiff stated that on September 11, 2006, when Correctional Officer T. Flores released all Purple Card carrying diabetic inmates in Building #3, [plaintiff] immediately flagged for insulin release without success. (Id. at 53.) Plaintiff also contended he was forced to choose food over insulin. (Id.) The grievance noted that plaintiff withdrew his complaint against C/O Rodman-Paxton, but retained his complaint against C/O Flores because "C/O Flores continually fails to release [plaintiff] for . . . diabetes treatments." (Id. at 53.)

The reviewer contacted C/O Parks regarding the process for releasing diabetic inmates. (Id.) Officer Parks "explained that diabetic inmates are usually released from 0600 hours to 0610 hours, depending on the program for that day." (Id. at 53-54.) "On November 26, 2006, CO Rodman-Paxton noted in the Building #3 Logbook that you had 'refused' to go for your diabetes treatment. You were supposed to go to the Correctional Treatment Center (CTC) to sign refusal papers, but you did not go." (Id. at 54.)

/////

4

1  The reviewer added that

2  CO Parks informed the Second Level reviewer that the morning
   meal break is at 0715 hours, so [plaintiff] had almost an hour to go
3  to the CTC for [his] diabetes treatment. [Plaintiff] is a porter in
   Building #6, working under the supervision of CO Overstreet and
4  other staff. CO Overstreet is aware that [plaintiff is] a diabetic
   inmate. CO Overstreet is authorized to document any tardiness in
5  reporting to your assignment even if the delay is caused by staff
   action or inaction. Any delay in reporting to work must be brought
6  to the attention of your work supervisors immediately.

7  [Plaintiff has] the responsibility to ensure that you are fully
   prepared and ready for the early morning medical unlock. You
8  have a personal responsibility to report for medication line at the
   proper time. Since the Dining Halls and the CTC are in close
9  proximity, it should be relatively east for you to attend to both of
   these matters.

10

11 (Id. at 54.) The reviewer partially granted plaintiff's appeal: "Your request to be released with

12 other diabetic inmates is partially granted, depending on the program and your ability to be ready

13 for a timely release from your cell." (Id.) "Your request for no retaliation for filing this appeal is

14 granted, in that you will not be subjected to reprisal or retaliation for filing this appeal. However,

15 you must fully comply with all institutional procedures to ensure timely release for morning

16 medical treatments and meals." (Id.)

17  No Director's Level Response was found in the documents submitted by plaintiff.

18  The purpose in issuing a temporary restraining order is to preserve the status quo

19 pending a fuller hearing. The cases contain limited discussion of the standards for issuing a

20 temporary restraining order due to the fact that very few such orders can be appealed prior to the

21 hearing on a preliminary injunction. It is apparent however, that requests for temporary

22 restraining orders which are not ex parte and without notice are governed by the same general

23 standards that govern the issuance of a preliminary injunction. See New Motor Vehicle Bd. v.

24 Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch.

25 Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting);

26 Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990). In many cases the

5

emphasis of the court is directed to irreparable harm and the balance of hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice.

The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision after a trial on the merits. See C. Wright & A. Miller, 11 Federal Practice and Procedure, § 2947 (1973). In addition to demonstrating that he will suffer irreparable harm if the court fails to grant the preliminary injunction, plaintiff must show a "fair chance of success on the merits" of his claim. Sports Form, Inc. v. United Press International, Inc., 686 F.2d 750, 754 (9th Cir. 1982), quoting Benda v. Grand Lodge of International Association of Machinists and Aerospace Workers, 584 F.2d 308, 315 (9th Cir. 1979). Implicit in this required showing is that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial.

In addition, as a general rule this court is unable to issue an order against individuals who are not parties to a suit pending before it. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).[3]

The claim underlying the instant motion for preliminary injunctive relief is that prison officials at CSP are deliberately indifferent to plaintiff's serious medical needs, and are retaliating against plaintiff for the claims he is bringing in this action by interfering with this access to insulin and other diabetes' medications. Plaintiff also raises deliberate indifference claims surrounding his June 27, 2006 to July 6, 2006 hospitalization for an abscessed tooth, as well as a failure to provide necessary follow-up care. (November 8, 2006 Motion at 3-4.) However, all of these claims relate to alleged denials of care that took place in 2006. (Plaintiff's

---

[3] However, the fact that injunctive relief is sought from one not a party to litigation does not automatically preclude the court from acting. The All Writs Act, 28 U.S.C. § 1651(a) permits the court to issue writs "necessary or appropriate in aid of their jurisdictions and agreeable to the usages and principles of law." The All Writs Act is meant to aid the court in the exercise and preservation of its jurisdiction. Plum Creek Lumber Company v. Hutton, 608 F.2d 1283, 1289 (9th Cir. 1979). The United States Supreme Court has authorized the use of the All Writs Act in appropriate circumstances against persons or entities not a party to the underlying litigation. United States v. New York Telephone Co., 434 U.S. 159, 174 (1977).

December 14, 2006 Decl., at 1-4.) Because plaintiff's complaint was filed on November 5, 2004, the specific allegations contained within plaintiff's request will not be part of the underlying complaint in this action and, therefore, will not be given a hearing on the merits at trial.[4]

For the same reason, plaintiff cannot demonstrate success on the merits concerning his 2006 allegations on this record at this time because plaintiff has failed to exhaust administrative remedies prior to suit, as required by 42 U.S.C. § 1997e(a).

"Section 1997e(a) of Title 42 of the United States Code provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001)." McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002); see also Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion must precede the filing of the complaint and that compliance with the statute is not achieved by satisfying the exhaustion requirement during the course of an action. McKinney, 311 F.3d at 1199.

> California's Department of Corrections provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within fifteen working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal, through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal.Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c). [Footnote omitted.] If the issue is not resolved during the informal appeal, the grievant next proceeds to the first formal appeal level, usually conducted by the prison's Appeals Coordinator. Id. §§ 3084.5(b), 3084.6(c). Next are the second level, providing review by the institution's head or a regional parole administrator, and the third level, in which review

/////

---

[4] The court also notes that plaintiff filed a new civil rights action raising these 2006 claims. CIV S-07-0020 WBS CMK P. A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). Plaintiff also renewed his request for injunctive relief in that case.

is conducted by a designee of the Director of the Department of Corrections. [Footnote omitted.] Id. § 3084.5(e)(1)-(2).

Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005).

Here, the events at issue in plaintiff's request for injunctive relief took place in 2006. Therefore, while plaintiff may have a cognizable claim, he could not have exhausted his administrative remedies prior to bringing the instant action. Plaintiff, a state prisoner, may not proceed in federal court concerning claims for which he has not exhausted administrative remedies. McKinney, 311 F.3d at 1199.

The court's initial concern that plaintiff was not receiving his insulin is addressed by the medical records which reflect that from January through March, 2007, plaintiff was getting his insulin more often than not, usually twice a day. There were certainly not periods where plaintiff was not getting his insulin for multiple days in a row as has apparently occurred in the past. Moreover, it appears that plaintiff was granted early release to obtain insulin before meal call at 7:00 a.m. The December 19, 2006 partial appeal stated that a program for early release of diabetics was being developed, and the medical records reflect plaintiff has been able to attend clinic near the 6:00 a.m. and 5:30 p.m. release times on numerous occasions.[5] In any event, plaintiff must pursue his administrative remedies with regard to those claims prior to filing suit in federal court. Indeed, it appears plaintiff is pursuing those claims in a new action. See CIV S-07-0020 WBS CMK P.

On May 4, 2007, plaintiff filed a motion for emergency release from administrative segregation. Plaintiff claims he was placed in administrative segregation in retaliation for complaining that he had been assaulted by Plata medical officer C/O V. Freese on May 2, 2007. Plaintiff also believes his repeated ADA complaints and grievances were the

---

[5] Plaintiff's medical records for February, 2007, demonstrate plaintiff was seen at the clinic on or near 6:00 to 6:30 a.m. 23 days out of 29; in January, 2007, 16 days out of 31; in March, 2007, 16 days out of 31. Plaintiff was seen at the clinic on or near 5:30 to 6:00 p.m.: January, 11 days out of 31; February 13 out of 29; March, 9 out of 31.

reason why C/O Freese assaulted him. These claims are more appropriately raised in the new civil rights action filed by plaintiff on January 4, 2007, as that court will more likely be able to address the merits of the allegations that occurred in 2006, provided plaintiff has exhausted his administrative remedies. Plaintiff's May 4, 2007 motion should be denied without prejudice to its renewal in a more appropriate action.

However, in light of plaintiff's placement in administrative segregation and his resulting lack of access to his legal materials, the court will grant plaintiff additional time in which to file the third amended complaint. Plaintiff will be granted an additional sixty days in which to file a third amended complaint. Plaintiff is cautioned that he may only raise claims that were exhausted prior to the filing date of the instant action, November 5, 2004.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff is granted sixty days from the date of this order in which to file a third amended complaint that complies with this court's February 23, 2007 order and this order. the third amended complaint must be completed on the form provided with this order, must bear the docket number assigned to this case and must be labeled "Third Amended Complaint"; plaintiff must file an original and two copies of the third amended complaint; failure to file a third amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

2. The Clerk of the Court is directed to send plaintiff the court's form civil rights complaint for a state prisoner and accompanying instructions.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's November 8, 2006 motion for preliminary injunction be denied. (Docket No. 61.)

2. Plaintiff's May 4, 2007 motion for emergency release be denied without prejudice. (Docket No. 81.)

/////

1 These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 22, 2007.

/s/ John F. Moulds
UNITED STATES MAGISTRATE JUDGE

001; diaz2375.pi